## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Robert A.,[1]

      Plaintiff,

v.

Frank Bisignano,
*Commissioner of Social Security*,

      Defendant.

Case No. 25-cv-1697 (DJF)

**ORDER**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Robert A. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying his application for disability insurance benefits ("DIB") ("Decision"). Plaintiff asks the Court to reverse the Decision and remand this matter to the Commissioner under sentence four of 42 U.S.C. § 405(g). (ECF No. 1.) Plaintiff claims the ALJ erred in discounting the medical opinion of his treating doctor. (ECF No. 11.) The Commissioner asks that the Decision be affirmed in its entirety. (ECF No. 13.) This matter is before the Court on the parties' briefs. For the reasons given below, the Court affirms the Decision. The Court accordingly denies Plaintiff's request, grants the Commissioner's request and dismisses this action.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in court filings in Social Security matters.

**BACKGROUND**

I.    **Plaintiff's Claim**

Plaintiff applied for DIB on March 6, 2020 (*see* Soc. Sec. Admin. R. ("R.") 165).[2]  At that time, he was 49 years old (*id.*).  He had one year of college education (R. 211), certification as a machinist (*id.*), and previous work experience as a machine operator, machinist, and warehouse worker (R. 25-26, 211).  Plaintiff alleged a disability onset date of July 19, 2020 (R. 15, R. 320).  He claimed disability resulting from various conditions, including: strokes, seizures, weakness in right extremities, chronic obstructive pulmonary disease ("COPD"), and dizziness (R. 210).

II.   **Regulatory Background**

An individual is considered disabled for purposes of DIB if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In addition, an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

---

[2] The Social Security administrative record ("R.") is filed at ECF No. 6.  For convenience and ease of reference, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

2

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4). At step one, the claimant must establish that he is not engaged in any "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). The claimant must establish at step two that he has a severe, medically determinable impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). 20 C.F.R. § 404.1520(a)(4)(iii).[3] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing his residual functional capacity ("RFC") and proving that he cannot perform any past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If the claimant proves he is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v).

## III.    Procedural History

The Commissioner denied Plaintiff's application for DIB initially (R. 98) and on reconsideration (R. 109). On February 21, 2024, at Plaintiff's request (R. 112), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application (R. 12-32). An attorney represented

---

[3] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R. Part 404, Subpart P, App. 1.

Plaintiff during the hearing, and Plaintiff and a Vocational Expert ("VE") testified.  (*Id.*)  The ALJ issued her Decision on April 3, 2024.  (R. 59-88.)

At step one of the sequential analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity from July 19, 2020, his alleged disability onset date, to June 30, 2023, his date last insured.  (R. 64.)  At step two, the ALJ found Plaintiff had the following severe impairments: chronic obstructive pulmonary disease without exacerbation, asthma, history of cerebral vascular accident and probable transient ischemic attacks, depression, and anxiety.  (R. 64.)  The ALJ also found Plaintiff had gastroesophageal reflux disease and status post hemorrhoidectomy, but these impairments were not severe.  (R. 65-66.)  Though Plaintiff reported experiencing up to two seizures a day with temporary vision loss, the ALJ found that this was not a medically determinable impairment because he had never been diagnosed with a seizure disorder.  (R. 66.)

At step three, the ALJ concluded that none of Plaintiff's impairments individually or collectively met or medically equaled any impairment in the Listing.  (R. 66-69.)  The ALJ then determined Plaintiff's RFC.  She found Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except he can frequently push/pull with the left upper and lower extremities. [He] can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; and frequently crawl. [He] can frequently reach in all direction[s], handle, and finger with the non-dominant left upper extremity. [He] should avoid vibration. [He] can tolerate occasional exposure to fumes and odors. [He] must avoid extreme cold but can tolerate occasional exposure to humidity. [He] must avoid unprotected heights and commercial driving. [He] can perform simple, repetitive, and routine tasks with 3-4 step instructions, but cannot perform production rate or pace work such as assembly line work. [He] must avoid working with dangerous machinery. [He] can have frequent interact[ion] with supervisors, coworkers, and the public but no group or team-based activities. [He] can respond appropriately to occasional changes in a routine work setting.

(R. 69.)  In reaching this determination, the ALJ reviewed the record in detail, taking into

4

consideration the medical opinions and prior administrative medical findings in the record, Plaintiff's medical testing, examination and treatment history, Plaintiff's testimony regarding his symptoms, his employment history, and his activities of daily living.  (R. 69-82.)

After determining Plaintiff's RFC, the ALJ found at step four of the sequential analysis that Plaintiff had past relevant work as a warehouse worker, which was medium, unskilled work as classified by the DOT at an SVP level of $2^4$, but at the light exertional level as actually performed.  (R. 82.)  Based on the VE's testimony, the ALJ then determined that Plaintiff was still able to perform his past work as a warehouse worker as actually performed. (*Id*.)

Relying on the VE's testimony, the ALJ then found at step five that, considering Plaintiff's age, education, work experience, and RFC, there are additional jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: "housekeeping, cleaner" (DOT# 323.687-014), with approximately 177,000 jobs in the national economy; packer (DOT# 920.687-090), with approximately 159,000 jobs in the national economy; and sorter (DOT# 788.687-106, with approximately 60,000 jobs in the national economy.  (R. 83.)  Based on these findings, the ALJ concluded Plaintiff was not disabled through June 30, 2023, his date last insured. (R. 84.)  She accordingly issued the Decision denying DIB on April 3, 2024.  (*Id*.)

Plaintiff appealed the ALJ's Decision on April 24, 2024 (R. 162-64).  Finding Plaintiff's arguments did not provide a basis for changing the ALJ's Decision, the Appeals Council denied Plaintiff's request for review on February 21, 2025.  (R. 1-3.)  Having exhausted the administrative appeals process, Plaintiff filed this lawsuit on April 24, 2025.  (ECF No. 1.)

---

[4] "SVP" refers to the "specific vocational preparation" for a given occupation.  Unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the Dictionary of Occupational Titles ("DOT").  Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

**DISCUSSION**

**I.    Standard of Review**

The Court's review of the ALJ's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation modified). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains factual findings that "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

When determining a claimant's RFC, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative

6

medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the applicable regulations provide that an ALJ must evaluate medical opinions and prior administrative medical findings based on several enumerated factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's area of specialization; and (5) "other factors", including the medical source's familiarity with other evidence in the claim or understanding of Social Security Program policies, and whether new evidence came to light after the medical opinion was provided. 20 C.F.R. § 404.1520c(c).

The most important factors, when determining how persuasive a medical opinion or finding is, are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); *see also Postel v. Saul*, 18-cv-2017 (MAR), 2019 WL 4720990, at *13 (N.D. Iowa Sept. 26, 2019) (finding medical opinion unreliable, in large part, because it was inconsistent with "counselor's and medication managers' treatment notes"); *Pierce v. Kijakazi*, 22 F.4th 769, 773 (8th Cir. 2022) (affirming ALJ's rejection of treating physician's opinion in light of plaintiff's relatively conservative course of treatment). An ALJ must explain how she considered and evaluated both the consistency and

supportability factors, but she is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

## II.    Analysis

Plaintiff claims the ALJ's determination of his RFC was not supported by substantial evidence in the record as a whole because she improperly discounted the opinion of his treating medical provider, Dr. Felix Lai. (ECF No. 11 at 1.) Upon careful review of the record and the ALJ's Decision, the Court finds the ALJ complied with the applicable regulations and appropriately evaluated Dr. Lai's opinion in determining Plaintiff's RFC.

### A.    Plaintiff's History with Dr. Lai

Before he met Dr. Lai, Plaintiff had a long history of cardiovascular disease, including a cerebrovascular accident (stroke) approximately ten years before his alleged disability onset date and probable transient ischemic attacks ("TIAs") in November 2009 and September 2010. Plaintiff was treated with medication and continued to work after these events but stopped working in spring 2015 because he was laid off from his job. (R. 582, 407, 420.)

Plaintiff first visited Dr. Lai on May 25, 2021 to establish care. (R. 350-52.) Plaintiff presented with no neurological deficits and Dr. Lai recommended no changes to the ongoing medication management of Plaintiff's cardiovascular disease. (R. 351.) Dr. Lai noted that Plaintiff was hoping to obtain social security benefits at that time. (R. 352.)

Plaintiff saw Dr. Lai again on March 1, 2022 for follow-up after presenting to an emergency department on February 8, 2022 with weakness on the left side. (R. 329-334.) His symptoms resolved while he was in the emergency department, and a follow-up MRI was normal. (*Id.*) Dr. Lai recommended a complete work-up with a Holter monitor and an echocardiogram. (*Id.*)

Plaintiff returned to Dr. Lai on May 10, 2022.  (R. 328.)  Dr. Lai reviewed Plaintiff's echocardiogram and Holter monitor results and determined that both were normal.  (*Id.*)  Dr. Lai found Plaintiff was "medically optimized from a cerebrovascular standpoint" and recommended no changes to Plaintiff's ongoing medication management with aspirin and atorvastatin.  (*Id.*)  Dr. Lai's treatment notes indicate that Plaintiff was planning to apply for Social Security benefits "for recurrent episodes of dizziness and blacking out."  (*Id.*)

Plaintiff presented to Dr. Lai again on October 25, 2022 with numbness and weakness on the left side.  (R. 603.)  Dr. Lai referred Plaintiff for another MRI, which revealed no abnormalities.  (R. 605-06.)

Plaintiff returned to Dr. Lai on September 5, 2023 complaining of right shoulder pain.  (R. 660.)  Plaintiff reported he felt pain when he raised his arm from 30-90 degrees but was able to reach past 90 degrees without difficulty.  (*Id.*)  Dr. Lai recommended an MRI of Plaintiff's shoulder, which showed he had labral tearing.  (R. 654-56.)  Dr. Ryan Foley, who consulted with Plaintiff regarding the MRI results on November 14, 2023, recommended "conservative measures" including over-the-counter anti-inflammatories and physical therapy.  (R. 656.)

On February 20, 2024, Dr. Lai provided an opinion letter supporting Plaintiff's claim for Social Security benefits.  (R. 702.)  Dr. Lai stated that after July 2020, as a result of weakness in Plaintiff's left arm and leg arising from previous strokes, he would be restricted to sedentary work, could not lift 20 pounds occasionally or 10 pounds frequently over the course of sustained employment, and could not stand for more than two hours in an eight-hour workday.  (*Id.*)

**B.      The ALJ's Evaluation of Dr. Lai's Opinion**

In determining Plaintiff's RFC, the ALJ thoroughly reviewed Plaintiff's treatment history with Dr. Lai and Plaintiff's other medical providers, summarizing each visit and the accompanying

medical records in comprehensive detail. (R. 72-78.)  Upon review, the ALJ found Dr. Lai's opinion letter to be unpersuasive on the ground that it is inconsistent with Dr. Lai's own treatment notes as well as the other medical evidence in the record. (R. 80-81.)

In reaching this conclusion, the ALJ observed that, when Plaintiff first visited Dr. Lai to establish medical care in May 2021, Dr. Lai's examination revealed nothing noteworthy. (R. 81.) A previous physical examination one month prior was also unremarkable. (*Id.*)  The ALJ noted that Plaintiff had multiple examinations after he first met with Dr. Lai, with no documented weakness or pain until his emergency room visit in February 2022.  During that visit, Plaintiff reported muscle weakness on the left side, but his symptoms resolved on their own while he was still in the emergency room. (*Id.*)  The ALJ explained that Plaintiff's follow-up visits after that date documented no significant neurological deficits, normal echocardiogram and Holter monitor reports, normal gait and only conservative treatment. (*Id.*)  The ALJ noted that Plaintiff had a neurological exam in January 2023, during which he was found to have normal gait and grip strength, but slightly reduced strength in his left upper arm and mild weakness in his left leg. (*Id.*)  The ALJ acknowledged these examination findings but determined the limitations included in Plaintiff's RFC adequately addressed these deficits. (*Id.*)  With respect to Plaintiff's right shoulder pain and labral tear diagnosis in fall 2023, the ALJ noted that: Plaintiff was able to raise his right arm past 90 degrees without difficulty; a musculoskeletal exam was normal except that the right side was slightly weaker than the left; a December 2023 follow-up orthopedic exam showed normal range of motion and strength; and only conservative treatment was recommended for the labral tear. (*Id.*)  Based on these findings, the ALJ concluded that "Dr. Lai's opinion that claimant could not sustain employment without experiencing significant pain and fatigue is not supported

10

by the record, including his own treatment notes, that evidences many unremarkable physical examinations and nothing more than conservati[ve] treatment." (*Id*.)

### C.    Findings and Conclusions

The Court finds the ALJ's thorough analysis took Dr. Lai's relationship with Plaintiff into account and adequately explained how his opinion lacked support in the medical record and conflicted with both his own and other doctors' examination findings, which were either negative or found only minor deficits and recommended conservative treatment. The Decision therefore satisfied the requirements of 20 C.F.R. § 404.1520c.

Plaintiff cites 20 C.F.R. § 404.1527(c)(1) for the proposition that the ALJ should have given special weight to Dr. Lai's opinion because Plaintiff had a longstanding course of treatment with Dr. Lai, but Section 404.1527(c) is inapplicable to Plaintiff's DIB claim. That regulation applies only to claims filed before March 27, 2017. "For claims filed on or after March 27, 2017, the rules in § 404.1520c apply," 20 C.F.R. § 414.1527, and Section 1520(c) clearly states that an ALJ *must not* give special weight to any particular medical opinion, including an opinion from the claimant's treating provider. 20 C.F.R. § 1520(c)(a).

Plaintiff also contends the ALJ erred by substituting her own judgment for the medical judgment of Dr. Lai and argues the Decision "does not identify any medical opinion that is inconsistent with Dr. Lai's opinion." (ECF No. 13 at 11.) That statement is plainly incorrect. In addition to the above-cited medical evidence, the ALJ determined Plaintiff's RFC based on the opinion of the state agency medical consultant on reconsideration, Gregory Salmi, M.D., who found Plaintiff had the capacity to perform light work. (R. 78-79, finding Dr. Salmi's opinion persuasive, except that the ALJ adopted additional restrictions in Plaintiff's RFC to account for weakness in his left lower extremity; R. 55, Dr. Salmi's opinion dated April 14, 2023.)

Furthermore, though the determination of a claimant's RFC is a medical question that must be supported by at least some medical evidence, the final determination is properly left to the ALJ. *See Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020). Here, the ALJ based her determination of Plaintiff's RFC on the totality of the evidence in the record, including the medical evidence, and the Court concludes that substantial evidence supported that determination.

Finally, Plaintiff argues that because the ALJ improperly determined his RFC, the hypothetical question presented to the VE was flawed, such that the VE's testimony does not constitute substantial evidence, and the disability determination should be remanded. (ECF No. 11 at 12.) Because the Court finds no error in the determination of Plaintiff's RFC, the Court further finds the VE's testimony was not erroneous, and the ALJ's conclusion that Plaintiff is not disabled is supported by substantial evidence in the record as a whole. The Court accordingly affirms the ALJ's Decision.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. The Decision is **AFFIRMED**;

2. Plaintiff's Request for Relief (ECF No. 11) is **DENIED**;

3. The Commissioner's Request for Relief (ECF No. 13) is **GRANTED**; and

4. This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 10, 2026

_s/ Dulce J. Foster_
Dulce J. Foster
United States Magistrate Judge

13